Case number 13-5012. Margaret D. Newton, Appellant v. Office of the Architect of the Capitol. Mr. Leib for the Appellant. Mr. Peterson for the Appellate. May it please the Court, with respect to Ms. Newton, I would necessarily make the same arguments I made with respect to Ms. Swann. With respect to your question about what would necessarily be a retaliatory situation under the CAA that wouldn't necessarily be retaliatory under Title VII, I would respectfully say to the Court the claims that she made in the case that's in front of the Court in terms of her argument. I don't necessarily think we have to repeat what I've already said, and I would reserve. Okay. Thank you. May it please the Court, Benton, Peterson for the Appellate. The retaliation provisions in the Accountability Act are no broader than the retaliation provisions that are currently within Title VII. There are multiple ways to analyze this matter before the Court, from statutory to a review of the case law to factual. But it's in the blending of all three that is really indicating that there really would not be a different outcome for these facts under the CAA. Why don't you just tell us, I mean, assuming that's essentially correct, tell us in your view, one, did the District Court really apply the Burlington Standard? Because as I read the statement, it is so clear to me that that's what's being said. And if so, why do you think there was no retaliation here under that standard? Yes, Your Honor. The Court did cite Burlington Northern and May I interrupt just a moment and ask you to recite the Burlington Standard at the beginning of that answer? Yes, sir. Yeah. So on page 171 of the Joint Appendix where the memorandum of opinion was found- Don't drop the voice. I'm sorry, Your Honor. I'll try to get close to the microphone here. You find that the Court did cite Burlington Northern, and that standard revolves around what would qualify as materially adverse, and if it could likely dissuade a reasonable worker or supporting charge of discrimination. And the phrase within Burlington Standard and the phraseology used in Burlington Standard revolves around the idea of dissuasion, and even broader, likely to dissuade, as opposed to intimidate, which is found in the statutory language of the Accountability Act. I think the trial court judge, he got the material adversity, but then went on to define material adversity as requiring a significant change in employment status. That's not the Burlington Standard. That is not the Burlington Standard in terms of retaliation, Your Honor. Right. That is correct. So is that a problem? I mean, was the district court applying Burlington Standard? Because at one point he does state material adversity, but then the significant change in employment status is not correct. And he cited Douglas v. Donovan. That's a Title VII discrimination claim. It had no retaliation claims. Right. And the way we understood that to be, Your Honor, is that that was an example, or that's one indication, of something that could possibly dissuade a reasonable worker in terms of their… I wonder what your answer is. That's an interesting answer. It's not the standard. Are you prepared for the question? Sure. It's not the standard, of course. And the standard that overarches the entire decision was found on that page in 171 of the Joint Appendix, the Burlington Northern Standard, which brings to bear, I think, the larger question before the Court today is whether or not the arguments… I'm sorry, Your Honor. We made it on page 171 that you're relying on. It's the cite to Burlington Northern on that and the use of the suede. Now, that follows the language about a materially adverse action, right? That's right. Now, is materially adverse action a part of a Burlington Northern standard? Materiality is still a component of retaliation. This is correct, Your Honor. And I think that's part of the effort of Ms. Newton in this case is to try to dilute the idea of materiality. I think it's been clear, I think it's been stated today, that the goal here of Ms. Newton is to say that mere action of an employer, regardless of intent or whatever, that mere action in and of itself is enough to substantiate a retaliation. Now, again, in one sentence, what can you state of the Burlington Northern standard? Yes, Your Honor. The Burlington Northern standard would be an action only qualifies as materially adverse if likely to dissuade a reasonable worker. I'm paraphrasing, Your Honor. I could quote from the Burlington standard if you require. Thank you. But that's the argument that the government is putting forward. Which doesn't necessarily include a significant change in employment standards. It does not, Your Honor. Right. So your answer to his misuse of Douglas is that, well, if you have that, that could certainly be retaliatory as well. It's an example. Yes, Your Honor. But on that 171, it does say an action only qualifies as materially adverse if it could conceivably dissuade a reasonable worker from making or reporting a charge of discrimination. So that would actually be consistent with the Burlington citation as follows. That's consistent with Burlington Northern. That's correct, Your Honor. So the issue before the court then is whether, you know, Ms. Newton's arguments in citing various NLRB cases that were decided before Northern Burlington and before there was Harmony. Yeah, I think we've got, at least I do, I think we've got this. How do you address her specific claims of retaliation? What is your answer to that? Yes, with regard to the specific claims of retaliation in this case, there are three incidents that Ms. Newton points to, and that's dealing with the request to provide examples of her work, a reassignment to answer questions from employees, and also a letter, a memorandum of counseling. With regard to the first, they all suffer from a lack of materiality, but with regard to the first, the actual request to provide examples of her work, there's evidence in the record that that was never completed, and it's very clear where the parties stand on that. Ms. Newton stands on the principle that regardless of its completion, its inchoate nature, the fact that it was actually requested in some theory and in some way, in and of itself is an intimidating incident and registers or qualifies to dissuade a reasonable worker, even though it was never brought forward or never continued and never actually followed through on. That's clear difference between the parties, and I don't think it can get any starker that we don't believe that simply if the request was made and that management never followed through with it, that it turns into a materially adverse action as a result of just a request. Secondly, dealing with the request to answer questions of employees, Ms. Newton is a human relations specialist with a specialty in retirement. Due to retirements within the agency itself, she was asked to actually field questions dealing with retirement. This is far from the fact pattern in Brunton, Northern, excuse me, where an employee was asked to do work that was well-filled from their normal work, even though there was no demotion and no decrease in pay. She was a retirement specialist asked to perform her specialty in answering questions with regard to employees. As far as the disgruntled nature of the employees that came to ask her questions, there was no evidence in the record that they were more disgruntled than any other of the workers had to deal with. I'm sure I wouldn't draw a standard of disgruntled. Understood, Your Honor. So that once again, you know, it does not meet the standard of materiality. And as to the last issue of the memorandum of counseling, I believe that Ms. Newton has indicated to you today that under the Title VII standard, that is not deemed to be a materially adverse action in and of itself. And the letter itself never reverts or points to any disciplinary action as a result of that memorandum. It's simply a notation of complaints that were lodged against Ms. Newton and an indication of providing assistance to her if she should need assistance if the complaints were true and allowing her an opportunity to respond to those complaints. So all three of those incidents, they all have a paucity of materiality because they didn't result in any negative consequences toward her. And in some cases, they were not even completed actions. So we believe that the CAA has a materiality standard. We believe that the Title VII has a materiality standard. And under both rubrics, Ms. Newton's allegations are unsupported. So, Your Honor, in conclusion, Ms. Newton's arguments are a bit of an anachronism here because what she seems to be arguing against doesn't exist anymore. She seems to be arguing against the standards that were in place before Burlington Northern in terms of having a significant change in employment status, in terms of having tangible employment action. That is no longer the standard. Burlington Northern has, I think, harmonized Title VII and CAA in any capacity, and we don't believe that there's any real daylight between the term intimidate and the phrase dissuade a reasonable worker. We believe those terms are virtually synonymous, and we can't even imagine or come up with a scenario where there would be a case where one could be intimidated and not dissuaded, or vice versa for that matter. So we believe that this is a difference without a distinction and that the case law accurately reflects the intent of the CAA to cover intimidation as well as overt retaliation of actions. Thank you. In response to the respondent, I would state that in Burlington Northern, the court rejected Brown v. Brody, and they rejected materially adverse. They may have used the words materially adverse to necessarily describe what would be considered changing one's status to or chilling one or deterring one from submitting something to the Office of Compliance or submitting something to one of the internal organizations. In saying that, I would further state that Burlington Northern came approximately 18 months after the decision in Britain. Britain was May 23, 2005, and it was June of 2006 when Burlington Northern came in. Once again, I would state Burlington Northern, which conflates, as a lot of cases necessarily do, in terms of Title VII, the words discrimination and retaliation. They conflate them in terms of the standards of what has to be necessarily a discriminatory action and a retaliatory action. Much to my chagrin, but they do conflate them. However, you have a woman who had filed two cases prior to this case in the U.S. District Court. You then have the, quote-unquote, General Counsel's Office inquiring as to her work. You then have a substitute acting chief who doesn't necessarily know the retirement benefits program telling her to do something with, quote-unquote, disgruntled people. You have complaints against her. What was wrong with that exactly? The only thing wrong with that... Well, wait a minute. Apparently, she was told to answer questions about retirement, and she was retired in the first place. Now, what exactly makes that an adverse action of any kind? I do not necessarily call it an adverse action. I do call it something that is adverse, necessarily, if the people are, A, disgruntled, and if the complaints that are brought against you... Somebody had to deal with that, quote-unquote. Somebody had to deal with a disgruntled employee asking questions about retirement. She was a retirement specialist. What was wrong with telling her to go do your job? I find nothing wrong with that, telling her to do her job. But there's a caveat I'd like to add to that, Your Honor, and that is if the person is disgruntled and if they're going against or going to see Ms. Newton, who is also disgruntled, who is also being watched with an evil eye by the General Counsel's Office, who is also being scored and evaluated by somebody who doesn't necessarily know... But under those circumstances, she shouldn't be told to do her job? I'm not arguing that point with you, Your Honor. However, when she's not told what the complaints are that are against her, then she cannot necessarily respond to them. I'm not taking issue with her doing her position, Your Honor. I'm taking necessarily a position that says it's not due process and it's a chilling effect and a deterring effect from filing in the Office of Compliance when you're under the watchful eye of not only the supervisors but under the watchful eye of the General Counsel's Office. Okay. All right. Thank you very much. Thank you. The case is submitted. Thank you.
judges: Kavanaugh, Edwards, Sentelle